It's our contention that Mr. Haycock's 2011 Idaho conviction for sexual abuse of a minor under the age of 16 is not a crime of violence, and as such the court did make an error when they increased his base offense level from 14 to 20 under the United States sentencing guidelines. Now per Taylor and the camps, we must first compare the elements of Idaho's sexual abuse of a minor with the generic definitions. This court has recognized two generic definitions. One relates to statutory rape, sexual intercourse with a minor under 16, at least four years than the defendant, and the one that I think is at play here, sexual conduct with a minor and the statute requires abuse. So Idaho Code 18-1506 has four subsections, and one such subsection, perhaps even two, arguably fall outside of either generic definition. For example, you can be convicted of sexual abuse of a minor for inducing, causing, or permitting a minor to witness a sexual act or sexual conduct. And while abuse can be psychological, I don't think that will necessarily extend to, say, a 15-year-old observing two 18-year-olds engaging in a sexual act or sexual conduct. But if we take subsection B of the Idaho statute, which the government contends is at play here, to be convicted of the offense under subsection B... When you say the government contends, are you suggesting it isn't? Well, Your Honor, as the court's probably aware, the confusion in this case is there Well, if you read the charging document, the information, it does say 18-1506, but when you read the twit, it seems as if the only one that applies is B. It does. The language certainly does track, Your Honor, with subsection B. And with regard to that subsection, Your Honor, in order to be convicted of that offense, the essential elements of the crime are, number one, that the defendant committed the prohibited conduct, namely sexual contact, in this regard. Before we get to that, are you suggesting he wasn't convicted of the one in the information? No, Your Honor. He pled guilty to... What we know from this case, Your Honor, is that he pled guilty to Idaho Code 18-1506. And we know the twit, which is suggested that it is B. Correct. We know that from an information. We do have a judgment, right? Correct, Your Honor. And the judgment seems to suggest, in reading it, that having been advised of and waived that he pleads guilty to, count one, sexual abuse of a child under the age of 16. Correct. 18-1506. So, where's the confusion? I suppose the confusion here, Your Honor, is the way that the judgment's written. It doesn't say there's been any amendment. It doesn't say that, Your Honor, but what we have is a form here. And with regard to potential amendments or potential different information, we have a subsection below that that says, having been found guilty by a jury in the criminal offense charged in the information, amended information, second amended information on file herein as follows. But that's the jury. This didn't happen. It isn't even checked. That's correct, Your Honor. Having been advised of and waived your constitutional rights, remain silent, confront your witnesses, and therefore having pled guilty to, the next thing that's filled in is down that you, Joseph Raymond Aycock, are guilty of. And then it suggests, as follows, count one. I suppose the confusion here, Your Honor, is that that reference above that is not checked, the information, the amended information, second amended information, suggests that potentially there was, there were other information filed in this case that we don't know about. Well, because I've read a few Benoist County judgments, so I'm trying to follow you. It seems to me that he had pled guilty to, and then the next thing there is count one. He did, nobody checked that he had been found guilty of what was charged. Nobody says anything about information, amended information, or second amended information. All we got is count one. So what it says is, and that's the same count he was charged with in the information, count one, sexual abuse. Now, the worry that I have, which I guess the prosecutor can explain, it does say count one. I didn't see any count one in the first information. There's only one count at all. But nonetheless, it seems to me to be the same. Fair enough, Your Honor. Okay. Well, now let's get to the bottom of it. Okay. Now that we've got what the record says. So section 1B in Idaho, you had started to walk through. Yes, Your Honor. Basically, you've got your client, he's over 18, check with the federal statute, and acting to gratify sexual desire of himself or a third party. That's also a sexual act, correct? Correct. Check with the federal statute. Correct. And then you come to part three. And there, the Idaho statute says, sexual contact not amounting to lewd conduct with a minor. And so the question is, does that subsection categorically require abuse? And of course, we're going to ask the government the same thing. And I take it your argument is that once we get past whatever confusion you might have about what there was, which I don't think there's any, the question is, is there a categorical match? And your position is? There isn't, Your Honor. Correct. And I suppose what it comes down to is, there is no proof requirement of the exact ages of the defendant or the victim in the case under this particular subsection of the statute. All that's required to be proven or pled guilty to is that the victim in the case is under the age of 16 and that the defendant is 18 or over. Well, I guess under the Idaho statute, you could have certain touching which might not be considered abuse under a federal statute, correct? Correct. And you could still be convicted in Idaho? Yes. So let me then, I'm just trying to play out how this works because certainly DeCamp, we've all spent days and hours dissecting how it applies. So if we didn't agree with you, then we would have to go to the remaining clause, correct? The residual clause. Well, I suppose if you didn't agree with me, then we'd go to the modified categorical approach. No. Well, we've got to have a categorical match. We've got to have a match to go to there. Okay, fair enough. So that's where, I think that's where some arguments have gotten off track after DeCamp. No match, no category. So let's just say we didn't agree with you, just hypothetically, then we'd go to this residual clause which the government had submitted a statement saying that based on Johnson, then it's not, it's no longer taking the position that that residual clause applies to the sentencing guidelines, right? Correct. That's good for you, right? That's very good for us, Your Honor. Okay, but let me just ask you. Some people might argue, well, that's good for you, but that the government can't just go around deciding what the law is, that's up to the Supreme Court and the court. So it can't just back out of this after the fact when the district court did the sentencing, even though, of course, the acknowledgment by the government, as you say, is good for you, right? So let me just ask you, if we agreed with you, if we agreed that that third element was not a match. The abuse element, yes. Yes. So in other words, you're right on that, that there's not a match. I assume that you would then say, well, if that's the case, we would withdraw our claim under the residual clause, knowing what the government would do anyway, and therefore, we would just have to decide your case, there would be no appeal on that, and we'd decide your case under the no match clause, right? I suppose so, Your Honor. I hadn't given a lot of thought to the fact that we would be dealing with that because the government had withdrawn. Right. And for good reason, I can see why you might not. I'm just trying to play through different scenarios of how it might play out. Because I don't, when the government stands up, I know she's not going to take a different position than she told us in her paper. Correct, Your Honor. So, okay, maybe we should reserve your remaining time. I'm already over time, Your Honor, but if . . . Did you want to talk about the condition? I did want to talk about conditions. I can do that now, or . . . No, do it now. All right, thank you, Your Honor. The other thing we are dealing with in this case, of course, is the conditions of supervision that the lower court judge put in place. And our argument there is essentially that the lower court had very little information about Mr. Haycock's 2011 conviction, and even admitted that at sentencing, and admitted that suggesting, or at least suggested that that was better suited for the state court judge to deal with. But later, at the same time, imposed conditions of, essentially sex offender conditions upon Mr. Haycock as part of his federal supervision. Now, the lower court judge had no particular facts to go on besides the information and the judgment in this case. And he imposed an evaluation for sexual deviancy, and treatment, and polygraph testing. And he ordered a course of treatment that may or may not be necessary, because we don't have a psychosexual evaluation to tell the judge whether or not that's necessary one way or the other. So our argument there, Your Honor, is that we don't think that those conditions should have been put in place, essentially without taking into consideration the fact that we don't know whether or not he needs that course of treatment. Now that's also on top of the issue that we're possibly doubling up what's already being required of him in state court. So that's my argument on that, Your Honor. Let me frame a question on that. Is it an abuse of discretion for a sentencing federal judge without additional information to rely on whatever conditions were placed on a defendant by a state court concerning the same offense? I suppose it can be abuse of discretion when the judge has no information relating to the original offense and then imposes conditions that the previous judge imposed. Yes, Your Honor. And I'm out of time, Your Honor, but thank you. That's fine. No, we wanted to hear your argument on that. So now we'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Anne Wick. I represent the United States today. And may it please the Court and Counsel, the government's request today is that this Court affirm the district court's sentence imposed against Mr. Haycock, specifically under the two grounds that have been briefed. One, affirm the decision that the prior conviction for sex abuse of a minor under 16 constitutes a crime of violence as a forcible sex offense. And two, with respect to the supervised release conditions that were imposed and are contested. With regard to the first issue... So you're still waiving the idea about a serious potential of risk? Correct, Your Honor. And did the district court rule on that directly? The district court did rule on the alternative. In the sentencing transcript, he found under either approach, either prong of the guidelines, section 4B1.2A1, I think it's A2, either one would be satisfied. But the government is not pursuing that second residual clause. Right, I understand. Okay. Under the first one, it's the government's position that there is a categorical match to the generic definition, federal generic definition of sex abuse of a minor. You've heard me go through with Mr. Kinghorn, his real argument that he made in his brief regarding the information and the judgment, and I know what he's got to say there. I'm not sure I really follow or that I agree, as Judge McEwen has suggested. So let's hit Judge McEwen's questions. It seems to me that what we're really at here is we're at whether this statute requires abuse. Correct. And I guess I'm trying to figure out how B requires abuse. Certainly. It seems to me that B could be satisfied with as little as high schoolers touching each other. If you disregard the age requirement that it would be an adult. One high schooler one day over 18, the other high schooler one day under 16. Correct. That could apply. And is that abuse? The government's position is that it is in light of the language of the statute. And the best case to make that point, Your Honors, is the Barrow-Medina case. And I cite that one specifically because there's language in there. It's interpreting a California statute, I believe, that says even an innocuous touching innocently and warmly received violates the statute at issue if affected with lewd intent. And I would submit that you could take the intent portion of the Idaho statute, 1815-06, where it's talking about an intent to satisfy the lust, passions, desires, and so forth. What about Pelayo-Garcia, which basically on the age issue says, you know, if you have this conduct with minor adhesion of 16, it's not per se abusive, which, of course, this federal generic requires. Correct. And the language I would, I guess, highlight there is that it's not per se abusive. Well, but isn't that what categorical means? And I wrestled with that, to be honest. But it also doesn't say that it doesn't constitute abuse. And I think if Your Honors found it. If it's not per se abusive, it would mean that there could be conduct under the Idaho statute that wouldn't be abusive to match with the federal, correct? If the court takes that interpretation of the Idaho statute, yes. I divide the age requirement from the actual contact. And you have to, each statute's going to have to be read in context of what the contact or the conduct that makes it a crime is required with whatever age limitations there may or may not be. Because if you have a very aggravating state statute with conduct that doesn't have, for example, potentially consensual conduct, then it makes the age requirement thing less important. And then conversely, that's what makes the age requirement in terms of case law leading up to now so difficult for the government's case. I would acknowledge that. And I know you've alluded to the fact that, you know, you have a very young person here. But that's not part of our analysis under the categorical, wouldn't you agree? I would agree. Here, the age, ages of the defendant and the victim, nine, that's relevant to my second point under supervised release conditions. I think that the relevant age is there. But that's the categorical. I mean, we might in our heart think that's terrible, you know, or that there's something inherently wrong with someone touching and having a sexual act with a nine-year-old. But that's, so I think the government seems to agree that this, but this age differential is not a controlling factor under DeCamp under the categorical approach. Correct. And that's what's also hard with trying to find pre-existing case law specifically as to an age group that we have in Idaho, which is under 16 and perpetrators 18 and older, is there's a lot of case law that deals with, well, where we've evolved this per se rule of under 14. And if you look at the facts of many of the cases, which we were allowed to do pre-DeCamps, which I think was 2012 if I'm not mistaken, the court routinely would look and say, you know, this defendant's 26 and this is a statute that applies to 12 and 13-year-olds and his victim was under that age group and so forth. And until DeCamps, or DeCamps, however you pronounce that, we were allowed to do that. And so we don't have the same analysis that really we have to apply now, the strict categorical analysis. I think the court has- Let me just try a different scenario on you. Under the federal law, if you have kind of over-the-clothing touching, it's not sex abuse under the federal law, right? I believe Your Honor's correct. Okay. So then, under Idaho law, you could have, I guess I'll call it over-the-clothing touching. It seems that that actually could be under the Idaho law if you read it, in which case it wouldn't match under that either. That's probably correct and I probably should qualify, depending on where you're touching over-the-clothing might make a distinction under federal law. I know, but how would you categorically make that determination under DeCamps? You're stuck with a straight elements comparison. We're kind of stuck with the straight, I mean, obviously these legislatures didn't adopt these rules with DeCamps and these other cases in mind. And the Johnson- And the Johnson- Changing the landscape- Which now, I mean, everything has really been upended for all of us in the last period. Maybe- We could ask one question, though, categorical, with respect to how the categoricals applied. Do you agree we could not look ever at what the age of the defendant was? Outside of what, I think the answer is yes, I would agree. Outside of what the statute says, 18 or older. Or the difference of four years and so forth. So we couldn't look at age of defendant or victim? Correct. I mean, you'd have to look at the class. So in Idaho's context, the victim age is the class up to age 16 and the defendant's class is 18 and older. That's the closest you get to looking at what the ages are of the victim and defendant in a particular case. If that makes sense. Thank you. So if you had, along the lines that I asked your colleague, if we agreed with him but disagreed with you because of the way DeCamp has us analyze these things, this judge, Judge Windmill below said, well, it's either a categorical match, and if I'm wrong on that, there's this risk factor under the residual clause. And the government has now taken the position, well, we're not going to argue that the residual clause applies here in the context of sentencing guidelines. If there's an argument to be had that we can accept the government's, I don't know if you want to call it acknowledgment concession statement, but that we're restricted because we would have to decide that ourself, we can't just have the government deciding what the law is. What's the avenue for relief or remedy in this case? Do you understand what I'm saying? I mean, it's sort of like someone might argue, well, the government can't just wave its wand and now Johnson applies here, here, here, and here because Johnson was only Johnson and no court has said it applies on these sentencing guidelines. How do we factor in the government's concession to the alternative sentencing? Well, it puts me in a very tough spot, so to speak, in terms of not arguing my cause but answering the court's question. I would say that the government's concession is based on some existing law that has to do with vagueness challenges, constitutional vagueness challenges to the statute. May similar arguments about vagueness to the guidelines may be applied. There's existing case law that says... Let me maybe be a little more precise because I hear what you're saying. So you're now saying, well, that's really the legal basis. We're not just pulling this out of thin air. In the posture of this case where you have alternative sentencing and the government has now, in good faith, made that concession based on a legitimate legal foundation, are we bound by that? What do we do with it? That's what I'm asking. Well, the government's, I mean, position would be that the court shouldn't use the residual clause to rule in the favor of the defendant in this case. I think that's the bottom line is not only are we not... Do you think we have to go back and ask Judge Windmill that question rather than us? If we disagreed with you on part A, so to speak? My position, I guess, if the court remanded the case to Judge Windmill, I would have to say the same thing to Judge Windmill, which is please don't use the residual clause to rule in favor of Mr. Haycock. Okay. Can I turn to the supervised release conditions with my last 30 seconds? The standard of review on supervised release conditions is abuse of discretion. The district court is given wide latitude in imposing conditions, and the limitations must be that they're reasonably related to the goals of sentencing, specifically protection of the public need for treatment, excuse me, and deterrence, and that there are no greater deprivation of liberty than reasonably necessary and consistent with policy statements. The way I phrase this is the biggest question is who is the defendant being sentenced before the district court? Because that's the individual that the district court is going to give this individualized assessment to. And in this particular case, you have a defendant that is 55 at the time he committed the sex offense against a nine-year-old. The record before the district court about four years later is that he hadn't completed sex offender treatment. He'd absconded from supervision about one year after the sentence in the state court case. He was living in a remote cabin with a firearm. He tells officers he would have shot them if he'd known they were law enforcement. He hadn't registered as a sex offender, was required by the state court, and then basically had given every indication that he wasn't amenable to just supervision but also wasn't amenable to the sex offender rehabilitation conditions that were imposed by Judge Gibler in the state court case. And it's important to note that because Judge Windmill gave great deference and consideration appropriately to Judge Gibler in assessing Mr. Haycock when he was before the court on the sex offense and found that certain conditions were required to meet the similar goals of sentencing. And I think it's notable that Judge Windmill did not impose all the conditions that were requested by probation in this case. He narrowed the list of conditions and terms for Mr. Haycock to those that were imposed by Judge Gibler in the state case. In fact, we even took a recess so that probation could access the specific terms and conditions ordered in the state case. And Judge Windmill tailored his specifically to those, including, obviously, the ones that are contested. And so I would submit to the court that it wasn't an abuse of the court's discretion to impose those conditions that they're reasonably tailored, do not violate, or they do not deprive his liberty interest to the degree that's inappropriate. And I would ask the court to simply affirm Mr. Haycock's sentence. Thank you. Thank you. You have a short time for rebuttal, I believe. And I'll be quick, Your Honor. The only thing I would suggest is that I would argue that there is a deprivation of the liberty interest when the condition is imposed in a case that has nothing to do with, of course, him violating any statute regarding sex abuse. And I get that Judge Windmill can impose conditions that he thinks are necessary for that particular client. But imposing a condition that says you will undertake an evaluation for sexual deviancy, and then on top of that, you will actually take classes with regard to sexual deviancy, and you will undertake polygraph testing to assure that you're complying. I think the first step is potentially appropriate in this case, but then just saying, no matter what the evaluation says, you will eventually take classes anyway. We would suggest, Your Honor, that in this case, the better course of action would have been, well, let's see what the evaluation says. Thank you, Your Honor. Thank you. Thank you both for the argument this morning. United States v. Haycock is submitted.
judges: McKeown, Gould, Smith